United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 95-2132

United States of America,          \*

                                         \*

      Appellee,              \*   Appeal from the United States

                                         \*   District Court for the District

      v.                     \*   of Minnesota.

                                         \*

Allen H. McKinney,            \*

                                         \*

      Appellant.            \*

_____

Submitted: June 27, 1997

Filed: July 16, 1997
_____

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS
SHEPPARD ARNOLD, Circuit Judge.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This case comes before us for a second time. In United States v. McKinney, 79 F.3d 105 (8th Cir. 1996), we held that Mr. McKinney was not entitled on appeal to the benefit of the rule announced in Bailey v. United States, 116 S. Ct. 501 (1995), a case decided after his conviction, because at trial he did not raise the legal point that Bailey subsequently decided in his favor. The Supreme Court granted Mr. McKinney's petition for certiorari in that case, vacated our judgment, and remanded the case to us for further consideration in light of Johnson v. United States, 117 S. Ct. 1544 (1997).

See McKinney v. United States, 117 S. Ct. 1816 (1997). Having undertaken a further consideration of the case as directed, we reverse Mr. McKinney's conviction for using or carrying a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1) and remand the case for resentencing.

I.

In Johnson, 117 S. Ct. at 1549, the Supreme Court decided that a court of appeals ought to engage in "plain error" review under Fed. R. Crim. P. 52(b) with respect to legal principles not recognized at the time of the relevant trial, but recognized before the appeal was decided, because otherwise trial counsel might well feel obligated to make "a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent." We therefore proceed to evaluate the trial court's performance under a plain error standard.

In United States v. Olano, 507 U.S. 725, 734 (1993), on which Johnson relied, the Court held that to prevail on a claim of plain error an appellant must first show that the error complained of was "clear" or "obvious." In this case, Mr. McKinney argues that the error lay in submitting the gun charge to the jury because under Bailey the evidence was simply insufficient to convict him of "using" a weapon and because no submissible case was made that he was "carrying" one.

The evidence bearing on the weapons charge against Mr. McKinney can be briefly summarized. Mr. McKinney kept several guns in his heavily fortified compound in a room from which he monitored video cameras that were placed strategically so as to allow him to observe anyone approaching his building. As the government puts it in its supplemental brief, "the four assault weapons from the control room formed the basis for the defendant's conviction under 18 U.S.C. § 924(c)" because he was operating "an armed drug fortress" on the day that he was raided. The government argues that the operation of an armed fortress in and of itself amounts to a use of weapons sufficient to satisfy the requirement of Bailey. We disagree.

-2-

Before the decision in <u>Bailey</u>, we had indeed held that a person who maintains and operates an armed fortress for selling drugs was using guns within the meaning of § 924(c). <u>See</u>, <u>e.g.</u>, <u>United States v. Angell</u>, 11 F.3d 806, 810 (8th Cir. 1993), <u>cert. denied</u>, 512 U.S. 1239 (1994), and <u>United States v. Matra</u>, 841 F.2d 837, 842-43 (8th Cir. 1988). The rule of these cases, however, cannot survive the holding in <u>Bailey</u>, which requires a showing that a weapon was actively deployed before it can be said to have been used within the meaning of the relevant statute. The Court remarked in <u>Bailey</u>, 116 S. Ct. at 505-06, that the statement "I <u>use</u> a gun to protect my house, but I've never had to <u>use</u> it" (emphasis in original) demonstrated two different usages of the relevant word, but, the Court held, only the second, more specific of the two kinds of use fell within the reach of the statute. We thus believe that the government's evidence in this case, as the government itself characterized it, did not make out a submissible case on the question of whether Mr. McKinney used a gun within the meaning of § 924(c), because the government relies on the mere presence of weapons in a building to support the conviction.

Nor can we say that the evidence in this case was sufficient to support a conviction for carrying a weapon. Though the Court in <u>Bailey</u> did not reach the question of the meaning of the word "carry" in § 924(c), our court has had occasion to consider the matter in several recent cases. In all of the cases in which we have upheld convictions for carrying guns during or in relation to a drug-trafficking offense, the defendant has had the weapon either in a car's hatchback, in the passenger compartment of a car, or on his person, and was thus carrying the offending weapons in an obvious, literal way. <u>See</u> <u>United States v. Nelson</u>, 109 F.3d 1323, 1325 (8th Cir. 1997); <u>United States v. Caldwell</u>, 97 F.3d 1063, 1066 (8th Cir. 1996); <u>United States v. Willis</u>, 89 F.3d 1371, 1375 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 273 (1996); and <u>United States v. White</u>, 81 F.3d 80, 83 (8th Cir. 1996). Our cases have emphasized ordinary dictionary definitions of the word "carry": We have said that it means to have on one's person, to transport, to remove, or to convey. <u>See</u>, <u>e.g.</u>, <u>Nelson</u>, 109 F.3d at 1326, and <u>White</u>, 81 F.3d at 83. There is no evidence in this case that Mr. McKinney had any guns on

his person, or transported or conveyed them in any way, during or in relation to a drug offense.

Having a gun available for use, even an immediate use, is simply not the equivalent of carrying it. If it is not being transported at some relevant time, it is not being carried. The difference between having a gun at the ready in a building and having one available in an automobile may, from some perspectives, seem insubstantial, but the statutory line has to be drawn somewhere, else the offense of carrying a weapon might virtually swallow the offense of possessing one, and Congress has drawn a distinction between the two activities. Cases on either side of a line dividing legal acts from illegal ones, or one type of illegal activity from another, will frequently look so similar as to make the distinction drawn between them appear arbitrary and gratuitous. But that is sometimes the nature of the legal enterprise, especially when the relevant line is a fine one. Any rule that equated carrying a gun with having it ready to hand would, we believe, not only distort the meaning of words, but, as the Supreme Court remarked in Bailey, 116 S. Ct. at 509, with respect to use of a gun, would also "create an impossible line-drawing problem. How 'at the ready' was the firearm? Within arm's reach? In the room? In the house?" This is an inquiry in which we decline to engage.

Because the charge against Mr. McKinney for violating 18 U.S.C. § 924(c)(1) should not have been submitted to the jury, the trial court plainly erred in doing so.

## II.

Having concluded that the trial court erred plainly within the meaning of Fed. R. Crim. P. 52(b) in submitting the weapons case to the jury, we must inquire whether the error "affected" Mr. McKinney's "substantial rights." See id. In Olano, 507 U.S. at 734-35, the Supreme Court, while reserving a ruling on the question of whether a plain error has to have affected the outcome of the trial before it affected a defendant's substantial rights, held that any error that was that prejudicial certainly did affect substantial rights. While in Johnson, 117 S. Ct. at 1549-50, the Court indicated

-4-

a passing concern about whether the error that occurred in that case was a structural one, we do not read this as evidence of an intention on the Court's part to abandon or modify the criteria established in Olano for analyzing records for plain error. Rather, we believe that in Johnson the Court was concerned about whether the error there, though not prejudicial in the outcome-determinative sense, might not nevertheless have affected substantial rights because it was structural. We do not need to ask and answer this legal question in this case, because the error here was about as obviously prejudicial as one could be: But for the case being submitted, Mr. McKinney had no chance whatever of being convicted. In other words, the error affected his substantial rights.

We think it clear as well that, as Olano and Johnson both require before we can grant relief to Mr. McKinney, the plain error here is one that gave rise to a miscarriage of justice, because it resulted in the conviction of a person who was not guilty of the crime with which he was charged. The Court in Olano, 507 U.S. at 736, specifically observed that a "court of appeals should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant." This legal principle has, in fact, been applied in the courts of the United States for at least a hundred years. See Wiborg v. United States, 163 U.S. 632, 659-60 (1896).

III.

The fact that the evidence in this case was insufficient to support a conviction of Mr. McKinney under 18 U.S.C. § 924(c)(1) does not mean that the weapons that were seized in his building are without legal significance. To the contrary, U.S.S.G. § 2D1.1(b)(1) provides an enhancement for the possession of a gun in the course of a drug-trafficking offense.

We therefore vacate Mr. McKinney's conviction under § 924(c) and remand the case to the district court for resentencing in accordance with the views expressed in this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.